# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Stephen Tower,

                  Plaintiff,

v.

U.S. Department of Education,

and

Linda McMahon,
in her official capacity as Secretary
of the Department of Education,

                  Defendants.

Civil Action No.

## **<u>COMPLAINT</u>**

### PRELIMINARY STATEMENT

1.      The United States government, through the United States Department of Education ("the Department"), is the country's largest creditor of student loans. Today, there are nearly 43 million federal student loan borrowers, with approximately $1.62 trillion outstanding in debt.

2.      Congress designed the federal student loan program to expand access to higher education and increase economic mobility regardless of one's financial station. To accomplish this, clear and specific objectives exist for borrowers to have their loans forgiven without being hindered by the debt. Accordingly, among other programs, Congress established the Public Service Loan Forgiveness ("PSLF") program, which allows student loan borrowers to have their federal student loans forgiven in exchange for the borrower dedicating ten years of their lives to

working for qualifying public service employers and making 120 payments towards their student loans during 120 months of qualifying employment.

3.      For those borrowers enrolled in PSLF and who meet its requirements, loan forgiveness is mandatory.  Notwithstanding this clear Congressional command, the Department has withheld public student loan forgiveness from Plaintiff Stephen Tower ("Mr. Tower") for more than a year after he should have been eligible for that forgiveness, depriving him of his statutory and contractual right to debt forgiveness.

4.      As a result of having his loan forgiveness withheld by the Department, Mr. Tower has had his financial future placed on indefinite hold as he remains burdened with a debt that he legally should no longer owe. This debt continues to appear on his credit reports, restricting his ability to access credit to refinance his home, purchase a car, or pay for other necessities.

5.      Mr. Tower brings this lawsuit to compel the Department to abide by Congress's command to make loan forgiveness available to him pursuant to the PSLF Program.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a case arising under federal law: the Mandamus Act, 28 U.S.C. § 1361; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because Mr. Tower resides in New Hampshire, and because a substantial part of the events giving rise to these claims occurred in this District.

## PARTIES

8.      Mr. Tower is a 38-year-old nonprofit poverty law attorney who, at all relevant

times to this action, has resided in Thornton, New Hampshire. Mr. Tower owes approximately $257,378 in federal student loan debt, which he has been paying since 2014 without delinquency or default while pursuing PSLF.

9.    Defendant United States Department of Education ("Defendant Department") is a federal agency with its principal place of business at 400 Maryland Avenue SW, Washington, D.C. Defendant Department is responsible for administering federal student loan and grant programs in the United States.

10.    Defendant Linda McMahon is the Secretary of Education ("Secretary McMahon"). Mr. Tower sues Secretary McMahon in her official capacity. Secretary McMahon is charged with the supervision and management of all decisions and actions of the United States Department of Education, and so all allegations in this complaint against the Department of Education are also made against her.

## FACTUAL ALLEGATIONS

11.    PSLF mandates federal student loan forgiveness to public service workers who have worked for ten years in eligible public service jobs while making eligible payments on their federal student loans.  See 20 U.S.C. § 1087e(m)(1) (The Secretary of Education "shall cancel the balance of interest and principal due . . . on any eligible Federal Direct Loan" for a borrower who "has made 120" eligible "monthly payments on the eligible Federal Direct Loan after October 1, 2007" and "has been employed in a public service job during the period in which the borrower ma[de] each of the 120 payments." (emphasis added)).

12.    This directive is also included on a borrower's initial master promissory note: "Under this program, we will forgive the remaining balance due on your Direct Loans after you have made 120 payments (after October 1, 2007) on those loans under certain repayment plans

while you are employed full-time by a qualifying employer."

13. Mr. Tower graduated from law school in 2014.

14. At the time that Mr. Tower graduated from law school he had incurred $204,814 in total direct federal student loan disbursements (before any interest began to accrue).

15. At all relevant times, Mr. Tower worked for a qualified employer under the PSLF program. After law school, Mr. Tower worked as a civil legal aid attorney, first as a full-time volunteer at a legal aid clinic while looking for paid employment, and then in a paid role, providing civil legal aid services to impoverished members of his community, beginning in September 2015.

16. After graduating from law school, Mr. Tower's federal student loans went into a six-month grace period.

17. Mr. Tower made 113 PSLF-qualifying payments from November 2014 through May 2016, and from August 2016 through May 2024.[1]

18. Mr. Tower applied for and was enrolled in the Revised Pay As You Earn ("REPAYE") income-contingent repayment ("ICR") plan in February 2016 and remained so through 2023.

19. Consistent with his obligations in the REPAYE plan, Mr. Tower made timely payments toward his student loans.

20. Mr. Tower was never in default or delinquency for his student loan payments.

21. In 2023, Mr. Tower, along with all federal student loan borrowers in the REPAYE

---

[1] Mr. Tower was placed in a deferment or forbearance in June and July 2016 that did not qualify towards PSLF forgiveness. In addition, as with all federal student loan borrowers, Mr. Tower's required federal student loan payments were set at $0 from Spring of 2020 through 2023. During that time, Mr. Tower made certain annual lump sum payments each year to cover what would have been paid monthly. These payments qualify for PSLF.

plan, was automatically enrolled in the Saving on a Valuable Education ("SAVE") Plan.[2]  The SAVE Plan continued to be an eligible repayment plan for PSLF.

22.    Therefore, at all relevant times, Mr. Tower has been and continues to be eligible for PSLF.

23.    Mr. Tower was on track to and should have had his federal student loan debt forgiven in December of 2024, but that progress was halted overnight and with only a few months to go.

24.    In June 2024, Mr. Tower was involuntarily placed in a temporary administrative forbearance by his federal student loan servicer, MOHELA, while MOHELA transitioned to a new loan servicing platform.

25.    Then, in July 2024, Mr. Tower's loans, which had been in the SAVE plan, were placed into administrative forbearance as a result of litigation over the legality of the SAVE plan (the "SAVE Litigation").

26.    The SAVE Litigation does not impact the PSLF statute, regulations, or the Department's contractual obligations with respect to PSLF.

27.    When he was placed in forbearance beginning in June 2024, Mr. Tower had made 113 of the 120 qualifying payments necessary for PSLF.

28.    During the administrative forbearance, Mr. Tower has been prevented from making the remaining 7 PSLF-qualifying payments toward his loans.

29.    Because the SAVE Litigation has not resolved—a settlement agreement to end the SAVE Plan has been reached but has not yet been approved by the Court—Mr. Tower has been and continues to be in administrative forbearance for over 1 and 1/2 years.

---

[2] The Department renamed the REPAYE Plan to the SAVE Plan in July 2023 and made certain other changes to the program.  *See* Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program, 88 Fed. Reg. 43,820.

30.     The Department has an established process for obtaining PSLF while under deferment or forbearance.  Pursuant to 34 CFR § 685.219(g)(6), a borrower participating in PSLF may obtain credit toward PSLF for those months the borrower was under deferment or forbearance and was employed full-time by a qualifying employer: "For any months in which a borrower postponed monthly payments under a deferment or forbearance and was employed full-time at a qualifying employer . . . the borrower may obtain credit toward forgiveness for those months . . . for any months in which the borrower . . . (i) Makes an additional payment equal to or greater than the amount they would have paid at that time on a qualifying repayment plan." This process is alternatively described as the "Buyback" program.

31.     The Buyback program essentially requires borrowers who would have been eligible to have their loans forgiven during a period of deferment or forbearance to apply for forgiveness, receive a denial, and then request and receive reconsideration pursuant to the Buyback.

32.     A borrower who seeks and receives reconsideration through the Buyback program can receive loan forgiveness as long as they make a lump sum payment equal to or greater than the amount they would have paid as part of their qualifying repayment plan for those months they remained in deferment or forbearance.

33.     There is no specific Buyback application form.  Borrowers requesting Buyback must use the Department's general reconsideration form, which now includes a box to check if the borrower is requesting Buyback.

34.     At the time that Mr. Tower submitted his Buyback application, the reconsideration form did not have the Buyback checkbox and, instead, the Department instructed borrowers to include certain specific language in the reconsideration form.  This language,

however, no longer appears on the Department's website.[3]

35.     Mr. Tower applied for public student loan forgiveness on December 16, 2024. Upon receiving the denial of his forgiveness request, Mr. Tower submitted a reconsideration request pursuant to 34 CFR §685.219(g)(6), and included in his request the specific Buyback request language required by the Department at that time: "I have at least 120 months of approved qualifying employment, and I am seeking PSLF or TEPSLF discharge through PSLF buyback. Please assess my eligibility for PSLF buyback."

36.     Given the uncertainty surrounding PSLF, immediately after submitting his Buyback request, Mr. Tower contacted New Hampshire Senator Jeanne Shaheen's constituent services office and asked that they follow up with the Department regarding his buyback request. On January 17, 2025, Senator Shaheen's office provided Mr. Tower with a letter it had received from the Department of Education, which stated: "Currently, Mr. Tower's PSLF Buyback Request is being evaluated."

37.     After no action or further communication by the Department for 6 months, Mr. Tower submitted a second Buyback application on June 10, 2025.

38.     To date, neither of Mr. Tower's Buyback applications have been processed.

39.     Through no fault of his own, Mr. Tower has been unable to receive Public Service Loan Forgiveness and is therefore being deprived of his statutory and contractual rights.

40.     The Department's failure to forgive Mr. Tower's debts harms him in several ways. The loans, which continue to remain in involuntary administrative forbearance and collect interest, appear on his credit reports and their continued existence substantially limits Mr. Tower's access to any credit.

---

[3] *See* https://studentaid.gov/help-center/answers/article/how-submit-pslf-buyback-request (last accessed Feb. 2, 2026).

41.     In addition, Mr. Tower purchased a home in January 2024 with the expectation of his loans being forgiven later that year.  Mr. Tower has incurred a number of substantial home and auto maintenance and repair costs, and due to his Buyback application not being granted, has been prevented from refinancing his mortgage to access lower interest rates or accessing the equity in his home to pay for those unexpected emergency expenses.  Instead, Mr. Tower has been forced to carry substantial credit card debt in order to pay for those unexpected emergency expenses.

42.     While Mr. Tower could exit forbearance to continue accruing qualified PSLF payments for the seven months that he is pursuing Buyback, the only way to do so would be to enroll in another repayment plan option.  However, in addition to delaying his statutory and contractual right to PSLF loan forgiveness for another seven months and requiring Mr. Tower to make seven months of additional loan payments that he should not otherwise be forced to make, doing so would be financially impossible for Mr. Tower.

43.     Presently, the only payment plan Mr. Tower would be eligible to enroll in is income-based repayment ("IBR") under 20 U.S.C. § 1098e—Mr. Tower is no longer eligible for the ICR or Pay As You Earn ("PAYE") Plans, governed by 20 U.S.C. § 1087e, due to the timing of the issuance of his federal student loans.  IBR payments calculated based on Mr. Tower's 2026 income would cost him approximately twice what his 2024 Buyback payments would.[4]

44.     Pursuant to a court order in *American Federation of Teachers v. U.S. Department of Education*, filed in the United States District Court for the District of Columbia (Case No. 1:25-cv-00802-RBW), Defendants filed monthly status reports identifying the number of PSLF Buyback requests processed and outstanding each month.  Between April 30, 2025 and

---

[4] IBR payments for borrowers whose loans predate 2014 are calculated at 15% of discretionary income, defined as all income over 150% of the federal poverty level. Mr. Tower's loan payments in 2024 were calculated at 10% of his discretionary income, and his income has increased between 2024 and 2026.

December 31, 2025, the number of unprocessed PSLF Buyback requests nearly doubled, growing from 49,318 to 83,370. Case No. 1:25-cv-00802-RBW, ECF Nos. 36-39, 42, 58, 60. The Department's status reports appeared to show that it processed an average of 2,968 Buyback applications per month, meaning at the current pace the Department will not process all presently outstanding Buyback applications for two and a half years.

45.    Thus, with no communication from the Defendants and increasingly slow movement in processing buyback applications, there appears to be no end in sight for Mr. Tower's PSLF.

46.    The Defendants' continued failure to process Mr. Tower's Buyback application violates its statutory and contractual obligations and Mr. Tower's Due Process rights, and requires this Court to compel Defendants to act.

**<u>COUNT I</u>**
*(Unlawful Withholding of Agency Action in Violation of the Administrative Procedure Act, 5 U.S.C. § 706)*

47.    Mr. Tower repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

48.    The APA authorizes this Court to "compel agency action" that has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

49.    The Department is an "agency" as defined in 5 U.S.C. § 701(b).

50.    As alleged above, Defendants have a mandatory statutory, regulatory, and contractual duty to cancel the balance of any borrower who has made 120 PSLF-qualifying payments, including by processing borrowers' PSLF Buyback applications.

51.    Defendants are unlawfully withholding and unreasonably delaying Mr. Tower's PSLF forgiveness.

52.     Mr. Tower is entitled to injunctive relief compelling the forgiveness of his student loans pursuant to the PSLF and the Buyback program.

## COUNT II
*(Denial of Due Process in Violation of U.S. Const. amend. V)*

53.     Mr. Tower repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

54.     The Fifth Amendment of the United States Constitution provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law."

55.     As alleged above, Defendants have a mandatory statutory, regulatory, and contractual duty to cancel the balance of any borrower who has made 120 PSLF-qualifying payments, including by processing borrowers' PSLF Buyback applications.

56.     20 U.S.C. § 1087e(m) contains mandatory language requiring Defendants to cancel the balance of interest and principal due from borrowers who qualify for PSLF.  Thus, 20 U.S.C. § 1087e(m) creates a cognizable property interest for applicants in PSLF benefits.

57.     Mr. Tower, as someone who would have reached his 120 qualifying payments if not for the involuntary forbearance, has a cognizable property interest in the cancellation of his student loans under the PSLF program.

58.     Defendants' failure to forgive Mr. Tower's federal student loans without any meaningful process violates Mr. Tower's due process rights under the Fifth Amendment.

59.     The Due Process Clause of the Fifth Amendment requires Defendants to provide processes that give PSLF applicants notice and a meaningful opportunity to be heard on issues affecting their eligibility for this statutorily granted entitlement.

60.     In delaying Mr. Tower's loan forgiveness for more than a year beyond when he was statutorily and contractually entitled to such relief, and providing no meaningful opportunity

to challenge such unreasonable delays, Defendants have violated Mr. Tower's right to due process.

61.    In these ways, and those described herein, Defendants have deprived Mr. Tower of the rights, privileges and immunities secured by the Constitution.

62.    Mr. Tower is entitled to injunctive relief compelling the forgiveness of his student loans pursuant to the PSLF and the Buyback program.

## COUNT III
*(Declaratory Judgment Pursuant to 28 U.S.C. § 2201)*

63.    Mr. Tower repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

64.    An actual case or controversy exists between Mr. Tower and the Defendants concerning the Defendants' processing of Mr. Tower's PSLF and Buyback application, which has led to Mr. Tower's application being in limbo for over a year with no apparent end in sight.

65.    Defendants are mandated by statute to cancel the balance of interest and principal due from borrowers who qualify for PSLF.

66.    Mr. Tower qualifies for PSLF, submitted his application over a year ago, and Defendants have failed to grant or otherwise process Mr. Tower's application.

67.    Mr. Tower is entitled to a declaration that the Defendants must process and grant Mr. Tower's PSLF and Buyback application as they are legally required to do.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Tower respectfully requests that this Court:

     A.    Declare that Defendants are unlawfully withholding Mr. Tower's public student loan forgiveness in contravention of law;

     B.    Declare that Defendants are unconstitutionally denying Mr. Tower of his property interest in loan forgiveness without due process of law;

     C.    Issue permanent injunctive relief compelling Defendants to comply with its statutory, regulatory, and contractual obligations, and with the PSLF statute by granting PSLF forgiveness to Mr. Tower, including by processing his PSLF Buyback applications;

     D.    Award attorneys' fees as authorized by law, including, but not limited to, 28 U.S.C. § 2412; and

     E.    Grant such further relief as may be just and proper.


Respectfully submitted,

**STEPHEN TOWER**

By his attorneys,

**SHEEHAN PHINNEY BASS & GREEN, P.A.**

Dated: February 3, 2026
                              */s/ Abbygale M. Dow*
Abbygale Martinen Dow, N.H. Bar No. 272938
1000 Elm Street, 17th Floor
Manchester, NH 03101
(603) 627-8390
adow@sheehan.com

12